Good morning, Your Honors. Counsel, and may it please the Court, I am Assistant Attorney General Carl Trevel, representing the people of Illinois. This case is governed by Mendenhall and Cosby. In Cosby, this Court held that an officer's questions to a driver after a traffic stop had concluded did not constitute a seizure under Mendenhall. This case differs from Cosby in no meaningful way. Here the officer twice asked for consent to search and twice received it. Defendant concedes that three of the four Mendenhall factors do not apply. It was quite a different show of force in Cosby than it is in this case, isn't it? I'm sorry, Your Honor? Quite a different show of force by the police in Cosby than it was in this case. A second car came, Mars lights flashing in Cosby. That's not true here. One officer. That's right, Your Honor. If there were a show of force, it would differ from Cosby. Cosby was very similar to this case. It was also an early morning traffic stop. It was also a circumstance where the police officers were not blocking in the defendant's vehicle. It actually involved two police officers instead of one. But also in that case, the police officers had not brandished their weapons, just as they had not done here. So petitioners conceding that, excuse me, defendants conceding that three of the four Mendenhall factors don't apply. The only one that he contests might have played a role is he says that the officer's tone of voice in these circumstances must have been forceful because the defendant complied. But that logic would mean that that factor always applied any time a defendant consented to what the police officer was asking for. There's nothing in the record showing that the officer used such a forceful tone that the, that a reasonable person would have felt mandated to comply with the officer's request. In this case, indeed, the officer was acting more than reasonably. The police officer had told the defendant that he was free to go so long as his passenger drove the vehicle, despite the fact that the defendant in this case was driving without a valid license. Also, the officer could have interpreted defendant's initial consent to search the vehicle when he said go ahead and search it, to include both the car and the trunk, but the officer reasonably decided that he would ask both for permission to search the interior of the vehicle and also to search the trunk. So this wasn't a case where an officer was trying to use... No, Your Honor. The defendant misinterprets that in his briefing. We're not arguing that the first consent covered both and that, therefore, the inquiry ends there. We're just saying that that shows that the officer was acting more than reasonably in these circumstances because the officer could have simply relied on that, but he didn't. You're limiting yourself to the second consent? I'm sorry, Your Honor? You're limiting your argument to the second consent? That's right, Your Honor. And, indeed, the circumstances of that second consent were, if anything, more defendant-friendly than they were in the first initial encounter with the defendant. In the initial encounter with the defendant, the officer had placed the defendant in his squad car while researching whether or not he had a valid driver's license and then, while still in the squad car, had started asking him about the smell that he had smelled in the vehicle. And both the appellate court and defendant concede that the initial permission to search the vehicle in those circumstances under Mendenhall was not coercive. And then it just doesn't follow logically that when the defendant is in front of his squad car, a similar question of, can I search the trunk of the car, would somehow be more coercive in those circumstances. It's just not logical. But the driver was placed in the front of the car while the search was being conducted, and the passenger in the rear of the car? No, the passenger was placed in between the squad car and the Cadillac. But they were separated? They were separated. And told to stay there? I'm sorry. They were told to stay there? There's nothing in the record saying that they were told to stay there. They were placed in those positions? That's right. The officer says in his testimony, this is on pages 40 through 42 of the record, the officer says that he asked the driver to stand in front of the Cadillac and he asked the passenger to stand in between the squad car and the Cadillac. The search of the interior of the car, I think the record establishes, took about 15 minutes? The officer said it was approximately 10 to 15 minutes. And after that search, then they sought permission to search the trunk? That's right. After he concluded the search of the interior, the officer didn't find anything, so he went up to the front of the Cadillac. Actually, he first approached the passenger. In that scenario, it is your position that it was not coercive,  Yes, Your Honor. I think it's a similar circumstance to where an officer, the only analogy I can think of is where police officers ask a person of interest to come in voluntarily to a police station for questioning. When they do that, they don't simply allow that person to roam freely throughout the police station, but they'll usually put them into a room, like an interview room. And courts have frequently held that those circumstances don't create a seizure because the person is voluntarily consenting to come in. Part of the consent is you're giving up some of your movement at that point in time, your freedom to move. For instance, if an officer asks someone at an airport to search their bag, when they can voluntarily consent to that, they're giving up some movement at that point in time, but the courts have held that the person can always end that consensual encounter at any point in time and say, okay, this search is taking too long. There's nothing in the record to show the defendant felt that that 10 to 15-minute search of the interior of the car took too long. If he had, he simply could have requested, okay, that's enough, and we can end this now and I can leave with my passenger driving the car. So under Mendenhall, there's simply nothing in the record to indicate that a reasonable person would not have felt free to leave under that circumstance. And, indeed, adopting defendants' The four factors in Mendenhall are the only factors that can be considered? No, Your Honor. Mendenhall does state that you can consider the totality of the circumstances and just expresses those four factors as the most commonly applicable factors.  Any consensual search after a normal traffic stop would result in a second seizure because officers should be permitted to place the passenger and driver of the vehicle into a location where they're going to be safe. This was a traffic stop that took place at about 2.30 in the morning. Where the officers are going to be safe. I'm sorry, Your Honor? A place where the officers will be safe. Yes, Your Honor, it's both in the interests of officer safety because he doesn't want someone right next to him while he's got his head buried in the car searching around the car interior, but also for passenger safety. You don't want them wandering about aimlessly along I-80 at 2.30 in the morning. It could be a hazard both to them and to the other drivers that are traveling that thoroughfare. So adopting his interpretation would mean that officers could not do that without constituting a second seizure and that would simply turn Mendenhall on its head. Unless Your Honors have any further questions, I'll reserve my remaining time for rebuttal. Thank you. Good morning, Your Honors. My name is Fletcher Hamill from the State Appellate Defender's Office and I represent the defendant in Oppoly, Anthony Oliver. May it please the Court. Counsel. I think it's important to remember that the search in this case cannot possibly be justified as being supported by probable cause or reasonable suspicion of criminal activity. At best, the officer in this case, Officer Hampton, had a hunch based on his smelling cologne in the defendant's car that the crime was afoot. So this is a classic case of a fishing expedition. And the only way that this fishing expedition can be justified is if it was done pursuant to the defendant's valid consent. Now the appellate court held that the defendant's consent was not valid because he was seized unconstitutionally at the time that he gave it and that holding was correct and should be affirmed. Now the first question in this case was I thought whether or not the defendant's first consent at the conclusion of the traffic stop was operative or the second consent, given the State's position on that issue, I would simply point out that the case law on that issue treats it as a question of fact, one that is determined by what the parties actually interpreted the consent to be. It's subject to deferential review and given the appellate court's position on the matter and given the State's position on the matter, I would agree with both of them. In fact, the defendant's consent to search it, which was his exact word, it at the conclusion of the traffic stop was not sufficient for the officer to search the trunk. We paid deference to the finder of fact here in the trial court, isn't that correct? That's correct. Who in turn often pays deference to the testimony of parties? The testimony here, the only testimony on the issue is Officer Hampton's testimony concerning his own actions. And that's kind of circumstantial evidence of what he thought the scope of the consent was. And since the inquiry is, what did the parties think? There's nothing from the words of the officers that would lead us to believe this was a seizure, is there? I'm sorry, a seizure at what point? Well, is it the argument that after the first search, there was a request for consent for the second search, and the argument has been made, at least in the briefs, that it was a seizure at that point? Correct, yeah. And that seizure has to, concluding that has to come from somewhere. My question is, does it come from the words of the parties as they have given us? Okay, well, it comes from, I think it comes more from the actions. I understand about the placement of the two defendants, I understand that. But I'm simply saying, is there anything other than that, that you would infer that there was a second seizure? I think where it comes from is the actions of the parties. And I think that there's really three things. First, there's the placement of the defendant and Mr. James. There's also what the officer does during that 10 to 15 minutes. He's searching the passenger compartment of the car. 10 to 15 minutes, in his words, he searched it pretty good. And we don't know exactly what that means, but you can infer from 15 minutes in a passenger compartment of a car, that's a pretty thorough search. And he's basically having his way with the defendant's property during that time. So the defendant is standing in a place where he told him to stand. And his passenger is standing in another place, separated, where he told him to stand. They're not free to leave those points. And I think the state, when they say that it would be unreasonable to let them leave, I think they're impliedly conceding that they, in fact, weren't free to leave those points. Is it the 10 to 15 minute time frame for the first search that makes that a seizure? Is that part of your argument? I think it's part of it, yeah. So following that through, if a defendant gives consent to the search of a vehicle, is that consent with a time limit? I mean, any time, it would seem to me that any time you have consent to search a car, right, I mean, there's no problem with that search because it's given pursuant to consent. And a defendant standing in a certain area for that period of time, there's no seizure. And then he comes back and says, can I search the trunk? Yeah, go ahead. Any time there would be any search in which an argument could be made the search took too long, we'd have a seizure. Well, yeah, I think, well, the time frame, I think, is more of an indirect indicator of what the officer was doing in the car. What really makes this a seizure is, well, I think it's just a seizure. He's seized. He can't move. That's why it's a seizure during that period of time. If the search took two minutes, would it have been a seizure? It would have been a seizure. It would have been a constitutional seizure, but it would have been a seizure. And, in fact, I think that the consent search, the seizures during the consent search was constitutional. There's nothing wrong with him doing that for officer safety. It's a reasonable thing to do. Well, I'm talking about if the first search was two minutes, and he comes back and says, can I search the trunk? Yeah, go ahead. Was he seized because that first search took two minutes? Yeah, he was seized. He's seized when he's told to stand in the place. What defines the reasonableness of that seizure is the scope of the consent. He gave consent to search the passenger compartment of the car. And so it was reasonable for the officer to seize him while he searched the passenger compartment of the car. But what happens is he finishes searching the passenger compartment of the car, and now his justification for seizing the defendant and having him stand in that place is no longer there, but he's still continuing to seize. At the time he was told to stand at that place, there was one police officer who never showed his weapon. Correct. And no other police officer is on the scene. That's correct. However, I would – Do you deny or do you contest that there was a second consent? I'm saying that the second consent was invalid, was taken at a time that he was at that point unconstitutionally seized. Because the seizure from the consent search, the constitutional justification for that seizure ends with the ending of the consent search. And at that point there's no more justification for seizing the defendant. But what happens is at that point the officer does nothing and says nothing to the defendant to signify to the defendant that he's no longer seized, that he is now free to leave. So he's just – Is he required to do that? I think the – well, the question is, would a reasonable person in a defendant's position consider himself free to leave? And when he was objectively not free to leave that spot a moment before, and now he has become free to leave because the search is over, but if nothing happens to show him that that's the case, then a reasonable person in a defendant's position would not feel free to leave. So I do think the officer has some duty to affirmatively show the defendant that the encounter is over. Is there any – was there any – what does the record show? Was there any testimony? Did the defendant say anything to the officer? Did the officer say anything to the defendant other than apart from the consent? I believe that was all that was said at that point. He didn't say. He certainly didn't say, you're free to leave now. But the defendant didn't say, I'm leaving. No, he didn't. Does the request for the second consent imply that the defendant is free to leave? Can I search your trunk? Not I'm going to search your trunk, stay here. Can I search your trunk? Another question. Another request for consent. Does that imply that he's free to leave? He could have said yes. He could have said no. Right, but I think at that point he doesn't – whether he could say yes or no would be a separate question. Back to your question, the reasonable person standard. Would a reasonable person, based with the fact, can I search your trunk, know that one of the answers is no? And if the answer is no, he suspects that he can leave. Well, he wouldn't necessarily know he can leave if he says no. If he says no, he doesn't know what's going to happen. Our position is that under the circumstances the defendant was in, he would have felt that he couldn't leave. And that even if he said no, that the officer was still going to go ahead with what he was going to do. If we'd never had the first search and the conversation with the first search, and the officer had simply begun at the point where he asked the passenger and the driver if he could search the trunk, would it be a different case? Yeah, it would be. If immediately at the end of the traffic stop he says, as he said in this, if you're free to leave, can I search your trunk, like that, that would be a different case. It's the intervening search, it's the seizure during the search that creates a situation where the defendant would not have felt free to leave at the time of the second search. In Cosby, wasn't the situation similar to this? Well, it's similar to, the first request, the first consent to search is similar to Cosby. Immediately after the traffic stop, and that's why I think the appellate court found that the initial consent to search the passenger compartment was valid because there was, but what changes is this intervening seizure during the consent search. I mean, this is not necessarily the case that when you consent to search of the car, you consent to be stuck in a particular spot. The defendant could, from the defendant's perspective, there's nothing wrong with him being allowed to wander off while the car is being searched or look over the officer's shoulder and make sure he's not breaking anything. The officer would prefer not to do that. What about the individual safety of the passenger, the driver? Well, I think, well, their safety, I mean, I think they're capable of protecting themselves on the side of the road. The question is the officer's safety. It is a dangerous place, though, on the side of the road. It is. But, I mean, they could move off into the shoulder or something. I mean, they could avoid, I would think they could avoid getting hit by a car. They were placed at a point where they would not be hit by a car, is that correct? They were. But, really, the primary concern here was the officer's safety. I mean, the reason he put them there is for his own safety, not for theirs. Did he testify to that? Yeah, I don't think he did. Was there testimony? I think we can infer that. How can we infer that any more than we can infer that he was doing it for the people's safety? Well, I think in general. We don't know. I mean, if there's nothing in the record, we just don't know. Okay, I suppose we don't know. But he had had some reason to do it. And whether it be for the defendant's safety or the officer's safety. I mean, the defendant really could be taking care of his own safety. The officer's safety, I think, is the primary concern here. And that's why it's justified during the search. The question is, what happens when the search is over? Can you continue to hold him in that spot? And there the answer, I believe, is no. Now, looking at the final question. Were they handcuffed in that spot? Do we know? I mean, were they just said, like, stand over here? So, I mean, you stand over here, it might be two, three, four feet difference, right? Do we know what he said? Stand here? Don't move? I don't think the officer's exact words are in the record. I think he said he had the defendant stand in front of the car. He had James stand behind the car. I think the defendant used the term, he told me, assumed the position in his testimony. Either way, I do think it's clear that it was not just a request. He was going to require them to be there. And he got that across to them that they were required to be in that spot. And that's where they stayed. And they stayed there for 15 minutes while he, you know, rifled through their car. Do we know that the search of the trunk was 15 minutes? The search of the passenger compartment was 10 to 15 minutes. The search of the trunk, we don't know. I don't think there was any evidence of how long it took. You just said it was 15 minutes. I don't think that there's any evidence. I meant the passenger compartment. I apologize. The search of the passenger compartment was 10 to 15 minutes. You said the officer, one witness said he was told to assume the position? I believe the defendant used that term in his testimony. Did he describe what the position was? No. No. No, the testimony on this issue was probably less than what I would want. I think in large part because at the time that the hearing was held, the law was very different in the state. I'm sorry. Would you repeat what you just said? At the time of the suppression hearing, the law in the state was different than what it is today. And I think that accounts for a lot of the holes in the testimony. A lot of the issues that are not important today weren't exactly important in 2002. This is the third time this case is here? Yeah. Yes. And each time because of a change in Illinois law. I believe the appellate court originally decided this case under this court's decision, People v. Gonzalez, which was subsequently overruled, and now we're here on the new law. In part. In part, yes. In the relevant part. But the final question then is, given the defendant being seized at the time of the second, he gave his second consent, was that seizure constitutionally justified? And I think that's the easiest question to answer in this case because there was no probable cause or reasonable suspicion to begin with, and searching the passenger compartment and finding nothing certainly didn't give it to the officer. And whatever justification there was from the consent search was gone. So there was no justification for seizing the defendant at the time that he gave his second consent, so the seizure was unconstitutional and the consent was invalid. So the appellate court was correct to reverse the defendant's conviction. And if the honors don't have any other questions. Just one. Sure. The officer was alerted or was led to ask to search the interior because he sensed a smell. And he found, and once he started the search of the interior, he found the source of the smell. That's correct. A cologne bottle, I believe it was. Can you give a reason for wanting to go into the trunk? Have you satisfied the source of the odor? He did not, other than I guess he was still, you know, looking to find something. He never, you know, beyond this, you know, hunch that, well, I smell fragrance, sometimes drug dealers have fragrances. Other than that, he never had anything more to justify, you know, this search. So, you know, the first search is valid because the defendant did consent to it right after he was told he was free to leave. But then 15 minutes later, after that search is complete and after the defendant's been standing in one position outside of his car at 3 o'clock in the morning on, you know, to hold him any longer. So I would ask that you, Your Honors, affirm the appellate court. Thank you. Your Honors, the officer's testimony wasn't the only testimony about what happened here. The defendant also testified at the suppression hearing. But defendant's testimony varied so wildly from what the officer had said that I don't think anyone's giving it any credibility at this point in time. What the defendant said happened was that he never gave any consent to search the vehicle at all and that the officer just told him, hey, I'm going to go search your car. So we've departed quite a bit from what the arguments were at the opening suppression hearing at this point in time after this case has been up and down three times. When defendant says that this officer was making a fishing expedition, it implies that the officer was acting under a pretext to do anything he possibly could to search the vehicle. But that simply wasn't the case. The officer was willing to let the defendant drive away as long as the passenger drove the vehicle, despite the fact that he was committing an arrestable offense. He was driving without a license. If there was any pretext here, if this was a fishing expedition where the officer was acting with any kind of bad faith, he simply could have arrested the defendant. And just to be clear, we're not abandoning the argument that the first consent could have covered both. It's just that reaching that issue doesn't seem necessary in this case because as defendant concedes, three of the four Mendenhall factors are clearly not applicable, and there's nothing in the record to show that the officer's tone of voice was so forceful that the irrational person would not have felt free to leave. Simply put, the people have met their burden of showing that by a preponderance of the evidence, this was not a seizure under Mendenhall. Also, the defendant discussed the fact that he was standing there and felt that he was not free to leave. But there's nothing in the testimony by the officer saying that he told him he could not move from that spot. He had simply said in his testimony that he placed him there. And again, that's at pages 40 through 42 of the record. The court can review the officer's exact words. And there's also a report, I believe it's on page one of our appendix, where the officer described these events. If the defendant felt like the search was taking too long, he simply could have revoked consent. If he didn't want to stand there, he simply could have revoked consent, but he didn't. And I don't think it's reasonable to say that officers in Illinois can let a passenger and driver simply roam the highway freely in these circumstances. Perhaps this particular defendant feels that he could accept that risk, but he can't accept the risk for the drivers of the other vehicles that are passing by. If you've got people just wandering the freeway, who knows what could happen. And certainly in a civil lawsuit that came out later, the defendant wouldn't then be arguing, well, he accepted the risk and he felt free to leave, if God forbid something had happened. So I just don't think that's a reasonable rule for this court to adopt. Unless this court has any further questions. I'm intrigued by what you said, that the defendants denied having given permission to the officer, and the officer said that they did. And you kind of cast that in doubt that who would believe these defendants over an officer. Is it your position that whenever we have that conflict, the officer should be believed rather than the defendants? No, Your Honor. And the second part of that, does it make sense, is it reasonable for a defendant who knows that he has drugs in the trunk to say, search my car? I'm sorry, I missed the last part. Does it make sense that what? That a defendant who is aware knows that there's contraband in the trunk to say, yes, search my car? Okay, two answers to that, Your Honor. As to the latter one, it doesn't make any sense, but criminals often do things that don't make any sense. It's not smart for them to do so, but it happens all the time. As to the first question, our argument is not, you should simply believe an officer in this case no matter what, of course not. But here, the trial court made a factual finding that the officer's testimony was credible, and more importantly, so the point I was trying to make is his attorneys have abandoned any attempt to latch on to his original testimony and say that that was what happened. Everyone's accepting the officer's testimony as what happened. The only question is whether or not the officer used a tone of voice that was so forceful that a reasonable person would not have felt free to leave. So unless there are any further questions, we would ask that you affirm the trial court's original decision to deny defendants' motion to suppress and reverse the appellate court's judgment in this case. Thank you. Case number 108-089 will be taken under review.